Michael J. Aguirre, Esq., SBN 060402
Maria C. Severson, Esq., SBN 173967
AGUIRRE & SEVERSON, LLP
501 West Broadway, Suite 1050
San Diego, CA 92101
Telephone:  (619) 876-5364
Facsimile:  (619) 876-5368

Attorney for Plaintiff

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

DEE PERRY, an individual,

               Plaintiff,

     v.

JASON VILORIA, Superintendent of
Laguna Beach Unified School
District, in his official capacity, JAN
VICKERS, PEGGY WOLFF,
CAROL NORMANDIN, JAMES
KELLY, Members of Laguna Beach
Unified School District Board, in their
official capacities; and DOES 1 to 50,
inclusive,

               Defendants.

Case No.

**COMPLAINT FOR VIOLATIONS OF 42 U.S.C. § 1983 AND DECLARATORY AND INJUNCTIVE RELIEF FOR VIOLATIONS OF THE UNITED STATES CONSTITUTION**

**DEMAND FOR JURY TRIAL**

1

**TABLE OF CONTENTS**

I.     INTRODUCTION ...............................................................................1

II.    PARTIES .........................................................................................2

       A.    Plaintiff ...............................................................................2

       B.    Defendants..........................................................................2

III.   JURISDICTION AND VENUE ....................................................3

IV.    BACKGROUND ............................................................................4

FIRST CLAIM FOR RELIEF .........................................................16
Violation of First Amendment under 42 U.S.C. §1983

SECOND CLAIM FOR RELIEF .....................................................17
Retaliation under 42 U.S.C. §1983

THIRD CLAIM FOR RELIEF..........................................................18
Injunctive Relief for Violation of the United States Constitution

FOURTH CLAIM FOR RELIEF ......................................................18
Declaratory Relief

PRAYER FOR RELIEF ...................................................................19

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## I.    INTRODUCTION

1.      Since November 2014, Plaintiff Dee Perry has been a Member of the Laguna Beach Unified School District Board of Education in Orange County, California ("Board").   She was most recently re-elected in November 2018. Before serving on the Board, Plaintiff was a teacher and held other positions within the educational field there for more than three decades.

2.      Plaintiff has been outspoken in questioning, opposing and voting in opposition to the Board majority, as to a small percentage of actions and practices of the Board and the Laguna Beach Unified School District ("LBUSD"), including through the exercise of Board powers delegated to and exercised by the Superintendent and his staff, administration or other LBUSD employees.  Plaintiff also has been a "team player" and voted with the majority in most agenda matters on which the Board has acted.  At all times material herein, Board member Perry's actions have been civil, courteous, and proper under applicable law and rules as she understood them, and entirely consistent with her duty to represent her constituents.

3.      With pronounced intolerance for any substantive merit-based dissent arbitrarily deemed to be at odds with Board demands for "unity," "fidelity" and "allegiance" to the Board, through actions of the Board majority taken with conspicuous discriminatory intent, the Superintendent and four other Board members have retaliated and discriminated against Plaintiff, and in complicity with such aforesaid discriminatory purpose, conspired against her in violation of her First Amendment rights, including freedom of speech and association, Fifth Amendment right to due process, and Fourteenth Amendment right to equal protection of law, under the United States Constitution.

4.      Defendants' retaliatory conduct has repeatedly tried to prevent Plaintiff from exercising her civil rights and fully representing the constituents that elected her to the Board, and equal participation in the proceedings and actions of the Board, including equal performance and exercise of the duties, rights and powers of

Board members under federal and state law, as well as rules of the board that are legally binding under state law, including the California Education Code.

## II.   PARTIES

### A.   Plaintiff

5.   Plaintiff Dee Perry, a current Member of Laguna Beach Unified School District Board, resides in the County of Orange, California.

### B.   Defendants

6.   Defendant Jason Viloria has been the Superintendent of Laguna Beach Unified School District during all relevant times that resulted in deprivation of Plaintiff's constitutional rights.

7.   Defendant Jan Vickers has been a Member of Laguna Beach Unified School District Board during all relevant times that resulted in deprivation of Plaintiff's constitutional rights.

8.   Defendant Peggy Wolff has been a Member of Laguna Beach Unified School District Board during all relevant times that resulted in deprivation of Plaintiff's constitutional rights.

9.   Defendant Carol Normandin has been a Member of Laguna Beach Unified School District Board during all relevant times that resulted in deprivation of Plaintiff's constitutional rights.

10.   Defendant James Kelly has been a Member of Laguna Beach Unified School District Board during relevant times that resulted in deprivation of Plaintiff's constitutional rights.

11.   Each of the individually named defendants are named in their official capacity.

12.   Each of the defendants reside in the County of Orange, California.

13.   The true names and capacities of those Defendants sued herein as DOES 1 through 50, inclusive, whether individual, governmental, or otherwise, are unknown to Plaintiff, who sues those Defendants by such fictitious names. When the

DOE parties' true names and capacities and their actual involvement in the matters alleged herein are ascertained, Plaintiff will amend this complaint to accurately reflect the same.

14.     Plaintiff is informed and believes, and thereon alleges, that each of the fictitiously named defendants designated hereunder as a DOE is responsible in some manner for the occurrences alleged herein, and that Plaintiff's damages as herein alleged were proximately caused or contributed to by their conduct.

15.     Plaintiff is informed and believes, and thereon alleges, that at all relevant times herein, each of the defendants was the agent, employee, alter ego, and/or co-conspirator of one or more of the remaining defendants and in doing the acts alleged herein, was acting within the purpose, course and scope of such agency, employment joint venture or conspiracy, and with the consent, permission or ratification of one or more remaining defendants.

## III.     JURISDICTION AND VENUE

16.     This Court has jurisdiction under 28 U.S.C. § 1331 because the action arises from alleged violations of the U.S. Constitution and thereby depends on resolution of substantial questions of federal law.  This Court also has jurisdiction under 28 U.S.C. § 1343(3) and (4) because this action seeks to redress a deprivation, under color of law, of a right, privilege or immunity secured by the United States Constitution, and seeks to recover equitable and other relief under 42 U.S.C. § 1983, an Act of Congress providing for the protection of civil rights.

17.     Defendants are not barred from liability for damages under qualified immunity because their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 817, 102 S. Ct. 2727, 2738 (1982).

18.     Venue is proper in the Central District of California under 28 U.S.C. § 1391(b)(1) because the defendants are located in and do business in this District, including business related to the claims in this Complaint.  Venue is also proper

1
2
under 28 U.S.C. § 1391(b)(2) because the events giving rise to Plaintiff's claims occurred in this District.

3
4
5
19.     All actions by Respondent Board members and Superintendent constitute violations of the Federal Civil Rights Act and the U.S. Constitution, including the First, Fifth and Fourteenth Amendments.

6
**IV.  BACKGROUND**

7
8
9
20.     Plaintiff is a Member on the Laguna Beach Unified School District Board of Education. She was first elected in 2014 and has served five years on the Board. She was most recently re-elected in November 2018.

10
11
12
21.     As required by state law and Laguna Beach Unified School District Board Bylaws BB 9224 (2014)[1], "Prior to entering upon the duties of their office, all Governing Board members shall take the oath or affirmation required by law."

13
14
22.     Plaintiff has taken that oath and, therefore, has committed herself to the successful representation of her constituents.

15
16
17
18
19
20
21
22
23.     The Laguna Beach Unified School District Board of Education ("Board") "has been elected by the community to provide leadership and citizen oversight of the district." Board Bylaws BB 9000 (2012).  The Board is charged with "[s]etting the direction for the district focused on student learning and achievement[.]" *Id.* The Board also has the responsibility of "[p]roviding community leadership and advocacy on behalf of the students, the district's educational program, and public education in order to build support within the local community and at state and national levels." *Id.*

23
24
24.     Plaintiff, as a member of the Board, is charged with the following duties, amongst others:

25
26
27
28

[1] All references to the Laguna Beach Unified School District Board Bylaws are hereafter referred to as Board Bylaws" or "BB".

- Establishing and adhering to standards of responsible governance;
- Making decisions and providing resources that support district priorities and goals;
- Promulgating and upholding Board rules and policies as authorized by State law;
- Being knowledgeable about district programs and efforts in order to serve as effective spokespersons;
- Serving as a judicial (hearing) and appeals body in accordance with law, Board policies, and negotiated agreements; and
- Ensuring accountability to the public for the performance of the district's schools.

25. Under California Education Code § 35160, the Board exercises all executive and legislative powers and functions, with respect to all matters consistent with the purpose of public schools and education.

26. Under California Education Code § 35161, the Board acts as and for the school district in all matters, including delegation of its powers to the superintendent and other school employees, provided that the board retains legal responsibility for the exercise of all delegated powers in compliance with applicable Federal and State law, consistent with California Education Code § 35010(b) and Board Bylaw BB 9310.

27. As a Board member, Plaintiff is charged with "[e]nsuring accountability to the public for the performance of the district's schools" by both "[e]valuating the Superintendent and setting policy for the evaluation of other personnel" and "[m]onitoring and evaluating the effectiveness of policies."

28. "Board members shall hold the education of students above any partisan principle, group interest, or personal interest." Board Bylaws BB 9200 (2012). The Board "also has major commitments to parents/guardians, all members of the community, employees, the state of California, laws pertaining to public

education, and established policies of the district. Bard Bylaws BB 9005 (2012).
The Board shall "[g]overn in a dignified and professional manner, treating everyone
with civility and respect[.]" *Id.*

29.     Defendant Board members and the Superintendent are required to
comply with the provisions of the Brown Act and its obligations relating to public
meetings. The Bylaws specifically address this issue:

> The Superintendent or designee shall provide a copy of the state's open meeting laws (Brown Act) to each Board member and to anyone who is elected to the Board but has not yet assumed office.
>
> Board members and persons elected to the Board who have not yet assumed office are responsible for complying with the requirements of the Brown Act. Board Bylaws BB 9200 (2012)

30.     The Brown Act and Board Bylaws, including Board Bylaw 9310, also
provides criteria for calling a closed meeting and imposing and limiting the scope of
confidentiality rules, requiring specific notice to the public when meetings are
closed due to litigation, and enabling a Board member to challenge closed meeting
and confidentiality practices pursuant to Government Code § 54963 without
violating Brown Act or Board Bylaws closed meeting and confidentiality rules.

31.     Plaintiff values her position as a member of the Board and adheres to
the bylaws established by the District. Throughout her time on the Board, Plaintiff
has regularly met with her constituents, supported her constituents on matters of
their concern, and participated vocally at Board meetings in order to expand her
reach and effectively represent her constituents.

32.     Plaintiff has spoken on behalf of her constituents, even when it meant
disagreeing with other Board members and the Superintendent.

33.     Plaintiff has always spoken and continues to speak on behalf of the best
interests of her constituents.

34.     Defendants disagree with Plaintiff on policy issues and are depriving
her of her right to hold office and the right to exercise the authority of her duly
elected position.

COMPLAINT

35.    Defendants are offended by Plaintiff's public comments critical of Defendants' decisions. Defendants have taken action to silence Plaintiff because they do not want Plaintiff to expose their actions that Plaintiff believes in good faith to be non-conforming to legally binding Board rules and applicable State and Federal law, and/or to be wrongful and not in the best interests of the school district.

36.    Defendants systematically denied her from representing her constituents.

37.    Defendants denied Plaintiff from serving as Board President, denied her access to research and information needed to perform her elected duty of oversight, denied her requests to add items to the Board agenda, undermined her ability to participate in school events, interfered with her right to meet with her constituents, and have been working to deny Plaintiff's First Amendment rights, and retaliate against her and her constituents for exercising their rights.

38.    Defendants' actions have denied Plaintiff of her turn as President, denied Plaintiff the right, power and duty of her elected office to represent the Community and influence Board actions on an equal basis with other Board members, and denied Plaintiff important duties and powers of the Board President including the participation in development of meeting agendas, and speaking for the Board pursuant to Board-approved policies and actions consistent with State and Board Bylaws, including Board Bylaws 9010, 9310, 9320 and 9320.

39.    Board presidents are to be elected by the Board at annual organizational meetings convened and conducted according to State law (California Education Code § 35143) and the Board's own legally binding bylaws, including Board Bylaw BB 9100. In 2017 and 2018, the President and Clerk were to be elected in accordance with the Board's past practices (in all prior years except 1981), which was to reorganize the Board so that a member rotated from Clerk to President.

40.    This past practice was codified by the action of the Board in 2012 under Bylaw 9100 to provide: "After serving one year as clerk, the elected member

7

may serve one year as president.  It is the intent of the board that all members will rotate through the sequence of clerk and president."

41.  The use of the permissive "may" in the first sentence was to avoid an interpretation that service as a Board officer was compulsory, even if a member was unable or unwilling. The use of the affirmative and directive word phrase "will rotate" in the second sentence was to avoid ambiguity about the right of all able and willing to members to serve in sequence.

42.  In addition to the authority to elect officers at an annual meeting under California Education Code § 35143, the authority to create this right under a "legally binding" local rule consistent by Board Bylaw 9310 derives from Education Code §§ 35160 and 35010(b). In that context, the Board added the express and explicit declaration of legislative intent to the provision itself, making the meaning, intent and mandate of the provision clear on the face of the legally binding rule, not merely a statement of legislative intent in the record of the Board proceeding in which it was promulgated.

43.  The denial of Plaintiff's right under legally binding local rules at the annual organizational Board meeting on December 11, 2018, actually represented the culmination of a discriminatory course of action by the Board that began at a November 15, 2017 Board meeting when Plaintiff was first made aware the Board majority intended to prevent her from serving her turn as Board President.

44.  In November of 2017, the Board had met in an open meeting that, by selective action of the Board and Superintendent taken with a discriminatory intent, was conducted without customary and required audio or video recording. At that meeting – held in non-compliance with the Brown Act and public notice requirements, the Board majority initiated, and the Superintendent participated in, a discussion about election of officers at the upcoming December 2017 annual organizational meeting. That discussion went beyond review of the bylaw under which officers are elected that was the agenda item noticed to the public under the

Brown Act, and thereby constituted a meeting as to who would be elected at the December 2017 meeting, which was not noticed to the public nor allowed under the State annual organizational meeting statute, California Education Code § 35143.

45.     Given no real choice but to preserve her turn to rotate in sequence in 2018 by serving another term as Clerk, Plaintiff receded to the un-noticed agenda action of the Board Majority at the November 2017 meeting. Accordingly, at the December 2017 meeting when Plaintiff had completed one year serving as Clerk and should have rotated to President, it was decided and action was taken, as agreed under improper circumstances in the November 2017 meeting, that Plaintiff would serve one more year at as Clerk. This was based on the understanding reached at the November meeting that if re-elected in the upcoming November 2018 Board election, then Plaintiff would be rotated to President at the December 2018 meeting, and thereafter to serve as President in the 2019 year.

46.     The improper deviation from Bylaws at the 2017 annual organization meeting left Plaintiff with no option but to nominate the incumbent President to serve an additional term in order to preserve Plaintiff's own turn in the line of sequence, given the denial of her right to serve as President had the rotation been performed. Specifically, had Plaintiff not done so, there was nothing to prevent a member behind her in that sequence from being nominated as part of a "leap frog" tactic to become President before her.

47.     After Plaintiff was re-elected in November 2018, at the December 11, 2018 annual organizational meeting, the Board once again failed to make a record of the proceeding by either audio or video recording. With a virtual open meeting black-out in effect, the Board block-voted to both remove Plaintiff as Clerk and deny Plaintiff the rotation to President in retaliation due to Plaintiff's political beliefs, strong advocacy on behalf of students, and open-door policy to her constituents.

/ / /

48.     In addition to non-compliance with its own Board Bylaw 9100 in effect and legally binding at the time (under California Education Code § 35010(b) at that time, the manner in which the meeting was conducted and the deviation from Board practices demonstrate a collective concurrence with a vote having taken place outside of the public's view, prior to the meeting, in violation of the Brown Act.

49.     The Board meetings are to be recorded, were historically recorded, but the December 11, 2018 meeting was neither recorded by audio or video.

50.     When Plaintiff sought the recording of the Board meeting, she was informed it was not recorded. When she investigated the issue further, the Superintendent (Defendant Viloria) publicly chastised Plaintiff for the mere inquiry. Specifically, using hand gestures interpreted by many in the public as a tactic to silence her, the Superintendent stated to Plaintiff at the January 15, 2019 Board meeting, "You have no right to talk to staff" or to the recording services vendor about the December 11 meeting black-out.

51.     Defendants have egregiously interfered with Plaintiff's right to communicate with her constituents, and did so to deter her constituent's right to petition.

52.     The 2018 Senior Class President of the District's high school petitioned the school principal to allow the ASB President and Senior Class President to speak at the graduation ceremony. The Plaintiff was approached by her constituents and, in accordance with Board bylaws, contacted the Superintendent to manage and address the matter.

53.     The Class President and other students thereafter contacted Plaintiff about a matter relating to a school within the district and asked that she assist with allowing them to speak to the Board. Although the Board is permitted to hear from students and the public about school business, and although they are free to contact the elected Board members, the students were told not to speak with Plaintiff.

/ / /

54.     These students then coordinated a presentation at the August 21, 2018 meeting, after which the Superintendent made his disapproval clear to Plaintiff.

55.     In 2018, Plaintiff assisted parents, citizens and students in their grassroots efforts to enhance student government and civic empowerment of her constituents in the school governance process. One of Plaintiff's constituents, the 2018 High School Class President, went on to attend Brown University in the fall of 2018. The college freshman contacted Plaintiff as his community's elected Board member and asked to meet. Defendant Board member Peggy Wolff was not contacted by this constituent, but she nonetheless took the extraordinary step to send him an unsolicited email him on his private gmail address to interfere with his First Amendment rights to speech, association and assembly as to his elected Board member, Plaintiff.

56.     Although not a party to any communications between the constituent and Plaintiff, Defendant Peggy Wolff sent a deceptive email wrongfully suggesting board policy did not allow him to contact Plaintiff, and whose objective was to stop him from meeting with his elected official:

From: Peggy Wolff <wolff@lbusd.org>
Date: Fri, Dec 21, 2018 at 12:14 PM
Subject: meeting with a board member
To: [NAME AND EMAIL REDACTED]
Cc: Jason Alleman <jalleman@lbusd.org

Hi [NAME REDACTED]:

I hope your first semester at Brown went well. I know that adjusting to university can take some time.

I had heard through the grapevine that some students who had graduated were planning to meet up with a board member during winter break to discuss the Student Senate at LBHS. If this is true, then I figured you might be one of the students meeting.

I am concerned about this meeting because it is not the place of a board member to become involved in a school site issue. It is outside of our scope, and it is actually outside of our bylaws and protocol. If students have an issue with the student senate then they are to meet with the principal of that school.

The board operates as a "Board" and does so with majority rules decision making with all five members present. When a singular board member takes on a project, and then tries to manage that project individually, that is outside of the board's duties.

\*\*\*

I have attached the bylaw showing the limit of board member authority for your reference.

\*\*\*

Please let me know if you have any questions. And please let me know that you can always attend a board meeting and address ALL five board members during public comment.

Have a wonderful holiday.
Sincerely,

Peggy Wolff
Member, Board of Education
Laguna Beach Unified School District
550 Blumont Street | Laguna Beach, CA 92651
pwolff@lbusd.og | 949-497-7700 Ext. 5202

57.    The constituent sent an email to Plaintiff expressing his grave concerns about Defendant Wolff's unsolicited contact. The constituent stated, that he "personally found this email extremely strange" and that he was considering responding, line by line, "refuting the objectionable claims of this email, ranging from the fact that her attached Bylaw 9200 in no way bars me from meeting with you (in fact my right to meet with you, an elected representative who whom I have voted, is preserved by my 1st Amendment right to petition the government), to the fact that we very well could have discussed dozens of topics outside of school site complaints, not to mention how presumptuous Mrs. Wolff has been in contacting me this way."

58.    After Defendant Wolff sent this intimidating email, she shared it with Defendant Superintendent Viloria, a former Board member and an assistant so they were all informed, and by their conduct, ratified Wolff's interference of Plaintiff's First Amendment rights and her right to communicate with her constituents.

/ / /

59.    Defendant Wolff's attempts to restrain speech and right to associate are in gross violation of the United States Constitution.

60.    Defendants attempted to restrain Plaintiff from relaying a public concern of her constituents who felt that speaking against the District would result in retaliation to the speaker and/or students involved.

61.    Specifically, in complicity with staff and counsel, Defendants convened a closed meeting on March 26, 2019, without satisyfing the criteria of non-public meetings required to be in "substantial compliance with the Brown Act as to notice or announcement in public session before closure of a meeting of parties and claims in connection with pending or threatened litigation of which there is a significant risk under circumstances prescribed by State law (California Government Code § 54956.9).

62.    Plaintiff determined to the best of her good faith understanding that she had a legal right to challenge the legality and propriety of Defendants' attempt to conduct a closed meeting and impose rules of confidentiality in the manner employed for that purpose on March 26, 2019.  Specifically, she formed a common sense and good faith belief the legal criteria related to significant threat or risk under circumstances prescribed by law were not satisfied, thereby acquiring the right under California Government Code § 54693(e) to do so without being held to have violated the Brown Act.

63.    In an open session conducted on March 26, 2019, immediately after the aforementioned closed meeting on that date, members of the public expressed on the public record in the public comment period, concern about fear of retaliation to citizens, parents, students and teachers for questioning LBUSD policy.   Plaintiff had not discussed retaliation with those members of the public or disclosed information from the unlawfully conducted closed meeting. Plaintiff made comments about retaliation fears to the press after the open and closed session of March 26, 2019, based on statements by the public on the record of the open

13

1   meeting.

2   64.   On April 17, 2019, Defendants communicated to Plaintiff through

3   counsel that by discussing retaliation in the press after the March 26 open meeting,

4   she had violated closed meeting confidentiality rules imposed at the March 26

5   closed meeting.  The April 17 e-mail also threatened she could be sued in her

6   personal capacity and LBUSD could be sued for comments she made in the press

7   about retaliation fears after the closed meeting on March 26, 2019.  Plaintiff was

8   warned the board and LBUSD would not provide legal counsel or assist her in any

9   way if she was sued in her personal capacity, and asserted she had violated attorney

10  client privilege, even though board counsel had also advised the Plaintiff on her

11  legal rights and liabilities in that document.

12  65.   In June 2019, Defendants—including the Board member defendants,

13  the Superintendent, counsel and staff -- worked with their lawyer to unlawfully

14  exclude Plaintiff from participating as a Board member on Board business in closed

15  session, despite that she was duly elected to do so by her constituents.

16  66.   Defendants' plan to strip Plaintiff of her right to govern was brought

17  forward in a Resolution to Create a Board Subcommittee on Confidential Matters

18  which would exist for a period of one (1) year, unless extended or terminated by a

19  majority vote of the Board, and would consist of all members of the Board except

20  her.

21  67.   Defendants' coup d'état involved the Board's delegation to the

22  Subcommittee all authority of the Board with respect to matters which may be

23  placed on an agenda pursuant to Government Code § 54956.9 (pending/potential

24  litigation) or § 54957 (personnel) where, in the sole discretion and opinion of the of

25  the Board, confidentiality concerns necessitate a delegation of the matter to the

26  Subcommittee. The authority delegated to the Subcommittee would include the

27  authority to take actions related to litigation, pending or anticipated, and personnel

28  actions that are authorized to be taken in closed session.  Also, any particular matter

could be delegated to the Subcommittee under this scheme.

68.     The unlawful resolution and the development of the sham committee violate the Brown Act and unlawfully deny Plaintiff the right to participate in the work for which she was elected to perform.

69.     Defendants' intimidation and Constitutional violations are rampant. Defendant Superintendent Viloria has repeatedly tried to silence Plaintiff in public meetings with insubordinate chastisement condoned by the Board majority and in private meetings by raising his voice at her in an aggressive manner, and then petulantly refusing to meet with her on issues of governance. Defendants retaliate against Plaintiff by not allowing her to fully participate in the Superintendent's yearly evaluation, despite doing so being a duty of her position to which she was elected by the voters in the District.

70.     Defendants prevented Plaintiff from interacting freely with teachers and students, despite such interaction being within her discretion as an elected Board member.

71.     Defendants interfere with Plaintiff's ability to gain access to information useful to her decision-making process. Plaintiff asked for an accounting of the District's recent legal fees as fiscal responsibility is part of her charge and the Board needs to approve legal fees.  She was denied such accounting.

72.     Plaintiff was prevented from participating in Board meetings in violation of her First Amendment rights, in violation of the Board Bylaws, and in violation of her due process rights. Each of the aforementioned allegations are unlawful on their own, and together, prevent Plaintiff from fully representing her constituents who elected her to govern on their behalf.

/ / /

/ / /

/ / /

/ / /

COMPLAINT

# FIRST CLAIM FOR RELIEF

## Violation of First Amendment under 42 U.S.C. §1983

### (Against All Defendants)

73.     Plaintiff re-alleges and incorporates the allegations of all prior paragraphs of the complaint, as though fully set forth herein.

74.     "Every person who, under the color of any statute, ordinance, [or] regulation . . . of any State . . . subjects or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law." 42 U.S.C. § 1983.

75.     Plaintiff, a citizen of the United States, is endowed with a First Amendment right to speak critically of her government. As an elected Trustee of a board charged with governing the school district, Plaintiff has an obligation to take positions on controversial political questions so that her constituents can be fully informed by them. *Bond v. Floyd*, 385 U.S. 116, 136 (1966).

76.     Defendants, acting under the color of law within their official positions in the District as set forth herein, have sought to stop Plaintiff from taking policy positions that differ from theirs, and in so doing, have violated Plaintiff's right of free expression under the First Amendment of the United States Constitution.

77.     Defendants have demonstrated a pattern of conduct aimed at silencing Plaintiff's attempts to look into their questionable behavior.

78.     By preventing Plaintiff from attending community events, denying her proper and customary Board-related expenditures, and by doing the other acts complained of herein, Defendants have violated Plaintiff's First Amendment right to speak on behalf of and represent her constituents' interests.

/ / /

/ / /

/ / /

## SECOND CLAIM FOR RELIEF

### Retaliation under 42 U.S.C. § 1983

### (Against all Defendants)

79.    Plaintiff re-alleges and incorporates the allegations of all prior paragraphs of the complaint, as though fully set forth herein.

80.    Plaintiff questioned some financial and other decisions made by Defendants. In an effort to stop Plaintiff's further probing, Defendants retaliated and prevented her from serving her constituents.

81.    Defendants took action to chill or silence Plaintiff from exercising her constitutional rights under the First Amendment. Defendants retaliated by excluding her from Board meetings and creating a sham committee to do so, all designed and considered in violation of the Brown Act.

82.    Defendants retaliated against Plaintiff by aggressively contacting her constituent to interfere with her ability to meet and communicate with a voter.

83.    If Plaintiff had not taken policy positions contrary to Defendants, Defendants would not have so acted against Plaintiff. Defendants' actions are intended to chill, and in fact have effectively silenced, Plaintiff's speech.

84.    Plaintiff's right to hold office includes her First Amendment right to speak on behalf of her constituents and exercise the rights bestowed upon her as an elected official of the District, whether or not favorable to the Defendants.

85.    Defendants have taken steps to silence Plaintiff from doing her job and representing her constituents.

86.    Defendants have a desire to chill Plaintiff from using her First Amendment rights because Plaintiff takes different policy positions and questions Defendants decisions. But-for Plaintiff speaking out against Defendants, they would not have taken action against her.

87.    The adverse action against Plaintiff is a direct result of her speech.

/ / /

**THIRD CLAIM FOR RELIEF**

**Injunctive Relief for Violation of the United States Constitution**

**(Against all Defendants)**

88.     Plaintiff re-alleges and incorporates the allegations of all prior paragraphs of the complaint as though fully set forth herein.

89.     Defendants, and each of them, wrongfully and unlawfully infringed on Plaintiff's First Amendment fundamental rights and restrained Plaintiff from carrying out her duties as a duly elected member of the Laguna Beach Unified School District.

90.     Plaintiff requested Defendants refrain from infringing on her rights, but without success. She persists in her efforts to meet with the public, attend community events and conferences, participate in Board meetings, and speak with her colleagues in order to fulfill her oath and duties to her constituents.

91.     Defendants' violation of Plaintiff's constitutional rights will continue unless and until enjoined and restrained by order of this court. Defendants' actions will cause great and irreparable injury to Plaintiff and her constituents as Plaintiff is unable to fulfill her duties under the Board Bylaws and is unable to represent her constituents in any meaningful manner.

92.     Plaintiff has no adequate remedy at law for the injuries threatened and currently suffered; an award of monetary damages would not provide an adequate remedy as Plaintiff's fundamental rights continue to be violated.

**FOURTH CLAIM FOR RELIEF**

**Declaratory Relief**

**(Against all Defendants)**

93.     Plaintiff re-alleges and incorporates the allegations of all prior paragraphs of the complaint, as though fully set forth herein.

94.     A case of actual controversy exists regarding whether the Defendants violated Plaintiff's constitutional rights as alleged in this operative complaint. The

18

facts and circumstances alleged establish that a substantial controversy exists between the adverse parties of sufficient immediacy and reality as to warrant a declaratory judgment in Plaintiff's favor.

95. Plaintiff thereby seeks a declaration from this Court confirming Defendants violated Plaintiff's constitutional rights.

## PRAYER FOR RELIEF

Wherefore, Plaintiff prays for judgment against Defendants -- Superintendent and Board members -- as follows:

1. For a permanent injunction restraining Defendants from prohibiting Plaintiff from speaking to her constituents, from participating in Board Meetings, both open and closed session, from participating in School District and school events; and from obtaining information requested to do her job; and to mandate that Plaintiff be notified of Board members events and issues to the same extent as other Board members.

2. For a declaration that Defendants have violated Plaintiffs' rights under the United States constitution;

3. An award of litigation expenses, attorney fees, and costs pursuant to 42 U.S.C. § 1988 according to proof; and

4. For such other and further relief as the Court may deem just and proper.

AGUIRRE & SEVERSON, LLP

Dated: December 10, 2019          */s/ Maria C. Severson*
                                  Maria C. Severson
                                  Attorneys for Plaintiff

COMPLAINT